ANDREW TOWNS, Plaintiff-Appellant, *v.* JOHN KESSLER *et al.*, Defendants —(THE TRAVELERS INDEMNITY COMPANY, Appellee.)

(No. 72-44;

Fifth District—March 8, 1973.

Chapman, Talbert & Chapman, of Granite City, (Charles W. Chapman, of counsel,) for appellant.

Burroughs, Simpson & Wilson, of Edwardsville, (Robert W. Wilson, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff appeals from orders of court dismissing his complaint as to The Travelers Indemnity Company and denying plaintiff's motion to strike the motion to dismiss and entering judgment in favor of the insurance company when plaintiff elected to stand upon his complaint. The trial court has found that there was no just reason for delaying enforcement or appeal of this order.

Plaintiff's complaint alleges, in substance, that a co-defendant of The Travelers Indemnity Company was engaged in the tank car business in Madison County, Illinois, and had sold for dismantling purposes certain dilapidated tank cars to the Purdy Company where the plaintiff was employed, and that these tank cars were transported to the premises of the Purdy Company; that the plaintiff while in the exercise of ordinary care, while an employee of Purdy Company was engaged in dismantling one of the cars and was injured as a result of the negligence of The Travelers Indemnity Company which had issued directions and orders and had exerted control over the Purdy Company's testing procedures on the cars, and had designed, implemented, and approved the safety testing procedures of Purdy; that Travelers has involvements with the Purdy Company in that its inspectors and other representatives went on the Purdy premises periodically to inspect, direct, and/or supervise the safety precautions which were taken on said premises; that Travelers was negligent in that it (a) failed to indicate proper testing procedures to Purdy, (b) failed to properly supervise testing procedures, (c) approved improper and inadequate safety measures to be utilized by

Purdy, (d) failed to indicate to Purdy that appropriate warnings should be utilized in the work carried on at Purdy, (e) negligently performed safety inspections at Purdy's premises, (f) failed to detect and report the negligent and hazardous operations of Purdy; that as a proximate result, plaintiff sustained injuries and damages.

Defendant Travelers filed a motion to dismiss grounded on Illinois Revised Statutes, chapter 48, section 138—5, which provides, in pertinent part, that the employer's insurer for workmen's compensation is immune from civil suit of the type plaintiff filed, and that by reason of the statute, the complaint fails to state a claim upon which relief can be granted against Travelers. The motion was accompanied by an affidavit of the attorney stating that during the time mentioned in the complaint Travelers had a policy of insurance with Purdy which provided workmen's compensation coverage, and that any "involvements" of Travelers with Purdy as alleged in the complaint were solely by virtue of its position as insurer for workmen's compensation.

Plaintiff filed a motion to strike Travelers' motion to dismiss based entirely upon constitutional grounds, stating that the statute involved is unconstitutional for want of due process and equal protection of the laws in violation of the fourteenth amendment of the United States Constitution, article I, section 2, of the Illinois Constitution of 1970 and article II, section 19, of the 1870 Illinois Constitution, and that it violates article I, section 12 of the 1970 Illinois Constitution or article II, section 19 of the 1870 Illinois Constitution; that the statute further violates article I, section 16 of the 1970 Constitution or article II, section 14 of the 1870 Constitution, and violates article IV, section 13, of the 1970 Constitution or article IV, section 22, of the 1870 Constitution, and violates article I, section 13, of the 1970 Constitution or article II, section 5, of the 1870 Constitution. The only questions involved in this appeal are concerned with the claims of unconstitutionality of the above cited provision of the Workmen's Compensation Act.

The pleadings are extremely sketchy in setting forth the manner in which it is claimed that the statute violates the several articles of the constitution. From the brief filed in this court it is apparent that the plaintiff, while conceding the constitutionality of the denial of an action to the employee against his employer as being a valid classification or serving a legitimate legislative purpose, argues strenuously that the provision denying a common law or statutory action against the employer's insurer who provides safety service, advice, or recommendations is unconstitutional. The plaintiff sets forth his position in strong language; he repeatedly asserts by epithet that the statute is "irrational," "arbi-

trary," "capricious," "without any sound basis" and supported by "no valid reason."

In substance, the plaintiff argues that the only party who can be constitutionally relieved from liability when workmen's compensation benefits are paid is the employer. Plaintiff says that it is obvious (without any further argument than laying the claim) that the legislative restriction on liability to an insurance company is logically unthinkable.

The attorneys representing defendant, however, disagree, claiming that a majority of the states have awarded immunity to the compensation insurer and that the legislative classification is justified by (a) avoidance of double or triple payment in multiple liability, and (b) if liability results from the making of safety inspections, that these safety inspections will be withdrawn, denying the employees the benefit of the additional safety afforded by safety inspections.

This case follows a succession of events which are relevant to the purpose of the statute involved. In *Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 199 N.E.2d 769, the Illinois Supreme Court held, construing Florida law, that a Florida statute did not grant a general contractor's compensation insurer, who had made safety inspections, immunity from a common law action by the insured employees. In the *Nelson* case, the defendant and *amici curiae* argued that it would be against public policy to permit recovery against a compensation carrier as a third party tort feasor, contending that the result would be a curtailment of safety inspections, to the ultimate detriment of working men and their families. Our Supreme Court said, however, "Furthermore, whether we look to the law of Florida or Illinois, such a question of public policy is for the legislature not for the courts. *General Properties Co. v. Greening*, 154 Fla. 814, 18 So.2d 908; *Illinois Western Electric Co. v. Town of Cicero*, 282 Ill. 468; *People ex rel. Carruthers v. Cooper*, 404 Ill. 395."

Following the *Nelson* decision the Illinois legislature enacted an amendment to section 5(a) of the Workmen's Compensation Act (Ill. Rev. Stat., ch. 48, sec. 138.5(a)), effective July 1, 1969, to enlarge the immunity granted there to the employer to include the employer's insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agent or employees of any of them. Our search discloses no other case bearing upon the constitutionality of this amendment to the Illinois Workmen's Compensation Act.

■■ It is presumed that the General Assembly had, and acted with respect to, full knowledge and information as to the judicial decisions with respect to prior and existing law and legislation. *Graham v. General*

*U.S. Grant Post No. 2665, V.F.W.,* 43 Ill.2d 1, 248 N.E.2d 657; *Nardi v. Segal,* 90 Ill.App.2d 432, 234 N.E.2d 805.

We are concerned here only with the proposition of an immunity from a common law action accorded to an insurer who is alleged to have provided safety services to an employer of an injured employee subject to the Workmen's Compensation Act. The *Nelson* case was decided with respect to Florida law rather than Illinois law and the decision is, strictly speaking, *dictum* as far as the law of Illinois is concerned. It is, however, very persuasive authority for the point that Illinois would recognize a common law liability against a negligent insurer providing safety services. Together with the parties, we will assume for purposes of discussion that such a common law action does exist, absent the statute in question.

In like manner the statement of the Supreme Court in *Nelson* that public policy is a matter for the legislature is similarly *dictum,* but it is again very persuasive authority.

We are mindful that "\* \* \* all presumptions are in favor of the constitutionality of the statute or ordinance. \* \* \* [T]he burden of showing unconstitutionality is on the person who asserts it." Illinois Law & Practice, Constitutional Law, sec. 68.

■■ Considering in the aggregate for the moment the several claims of violation of the constitution, there is a common thread which may be stated to be that the general assembly may not act arbitrarily to confer privileges or immunities or to make class legislation, and the like. Similarly, it may not act arbitrarily to deny due process, equal protection or rights to a remedy and justice. Concurrently with these constitutional prohibitions is the concomitant constitutional power of the legislature to act reasonably in the exercise of the police power as the public good may require. We are put to the task, therefore, of deciding whether the apparent legislative purpose is a legitimate one in light of these constitutional requirements.

Under the statutory workmen's compensation scheme, a claim for workmen's compensation may be lodged against the employer, and if the injured employee desires, against the employer's insurer. See Ill. Rev. Stat., ch. 48, sec. 138.4(g).

From the consideration of the cases involving insurance for liability under the Workmen's Compensation Act, it appears that the insurer acts as a sort of indemnitor of the employer. Customarily, the insurer investigates the claim, conducts the litigation through attorneys provided by it, and, if solvent, pays the awards rendered and provides the temporary compensation and medical services required by the Workmen's Compensation and medical services required by the Workmen's Compensation

Act. As an indemnitor, the insurance company is directly financially interested in the monetary outlays which accompany the benefits and limitations provided by the Workmen's Compensation Act. The insurer has at least a limited ability to select its insureds, but it also has a direct financial interest in each claim. If the insurer can encourage the use of various safety precautions and practices it would hope to reduce the amount of its expenditures for injuries to the employees. At the same time, if an individual person or employer can make use of wise safety precautions they may avoid expenditures for injury to themselves or to their employees. That a party may have a direct financial interest in safety does not in and of itself prohibit safety as a desirable end to be attained by legislation.

■■ The law is clear that the guarantee in the fourteenth amendment to the United States Constitution with respect to the equal proection of the laws does not prohibit a state from exercising the police power by the enactment of laws for the protection of the health, safety or general welfare of the people. (See *Berry v. City of Chicago*, 320 Ill. 536, 151 N.E. 581; *Thillens, Inc. v. Morey*, 11 Ill.2d 579, 144 N.E.2d 735; appeal dismissed, 355 U.S. 606, 78 S.Ct. 538, 2 L.Ed.2d 524.) Based upon a similar public policy, the Supreme Court of Illinois held in *Hodges v. Percival*, 132 Ill. 53, 23 N.E. 423, that the adoption of safety devices subsequent to an occurrence was not admissible as evidence for the purpose of showing an admission of prior negligence since to do so would cause hesitation in adoption of changes which will prevent the occurrence of similar accidents.

It is significant that the plaintiff does not argue that the statutory immunity extended to insurers, *etc.*, fails to promote safety and because of the failure is an unreasonable or arbitrary classification. Instead, the plaintiff insists that the only valid classification would be based upon the relationship of employer and employee. We agree that on many prior occasions, the courts of this State have held that employer and employee may be a valid classification for purposes of due process, equal protection, and denial of remedies, but we are aware of no reason or any holding to the effect that this is the only valid classification. Insofar as we can determine, it would promote safety as effectively for insurers to make recommendations on safety practices or to install them as it would for others to do so. Since they are not mere volunteers or interlopers, but might be encouraged to do so by reason of a direct financial interest, it would appear to be logical to encourage them by an immunity from liability under the limited circumstances set forth in this amendment to the Workmen's Compensation Act. In any case, the plaintiff does not argue to us any way in which this classification is unreason-

able except, as we have previously pointed out, because of the sole reason that they are insurers.

Next, the insurer, who may conduct litigation as a party in its own name under the Workmen's Compensation Act, is intimately connected with the relationship of employer and employee, and as a result of that connection is directly involved financially. As the indemnitor of the employer, the insurer is as close to the employer as possible. Further, the insurer has subrogation rights under the Workmen's Compensation Act and succeeds to rights of the employer and, in part, of the employee. Ill. Rev. Stat., ch. 48, sec. 138.5; *Reno v. Maryland Cas. Co.*, 27 Ill.2d 245, 188 N.E.2d 657.

■■ Another basic principle governing constitutional attacks upon the validity of a statute is the requirement that the constitutional charge be set forth specifically and not on a generalized basis. Thus, in the *People v. Witt*, 394 Ill. 405, 68 N.E.2d 731, *cert.* den., 329 U.S. 797, 67 S.Ct. 482, 91 L.Ed. 682, our Supreme Court held "A general allegation of lack of due process, without specifying in what particular mode it was lacking, gives us no grounds to uphold such a contention." And Justice Shaefer, speaking for the court in *Jewel Tea Company v. Rowe*, 414 Ill. 495, 111 N.E.2d 568, said, "We have repeatedly held that a generalized charge of unconstitutionality, which is the most that a liberal construction can read into the complaint in this case, is insufficient to raise a constitutional question."

■■ For the above reasons, the action of the trial court in denying plaintiff's motion to strike and dismissing plaintiff's complaint against the Travelers Indemnity Company must be affirmed.

Judgment affirmed.

EBERSPACHER, P. J., and CREBS, J., concur.